UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN M. CORTEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

Case No. C12-385-RSL-BAT

**REPORT AND RECOMMENDATION**

Susan M. Cortez seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Ms. Cortez contends the ALJ erred by (1) failing to find at step two that depression, social phobia, anxiety, and obsessive-compulsive disorder ("OCD") were severe impairments; (2) improperly rejecting Dr. Akkaraju Sarma's opinions; (3) finding Ms. Cortez not fully credible; and (4) failing to pose a hypothetical question to the vocational expert ("VE") that included all of her functional limitations. Dkt. 17 at 2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings, pursuant to sentence four.

**BACKGROUND**

The procedural history is not at issue and need not be detailed. At issue is the ALJ's written decision finding Ms. Cortez not disabled. Utilizing the five-step disability evaluation

REPORT AND RECOMMENDATION - 1

process,[1] the ALJ found at step one, Ms. Cortez had not worked since December 31, 2005; at step two, she had the following severe impairments: diabetes, degenerative disc disease, and mood disorder; at step three, these impairments did not meet or equal the requirements of a listed impairment;[2] that Ms Cortez had the residual functional capacity ("RFC") to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk and sit up to six hours in an eight hour workday; occasionally use bilateral foot controls, stoop, crouch, kneel, and crawl; and that she could perform unskilled work with occasional interaction with the public and co-workers; at step four, Ms. Cortez could not perform her past work; and at step five, as there are jobs Ms. Cortez can perform, she is not disabled.  Tr. 11-23.

As the Appeals Council denied Ms. Cortez's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

**A.    The ALJ's step two findings**

Ms. Cortez contends the ALJ erred at step two in failing to find depression, social phobia, anxiety, and OCD were severe impairments.  Dkt. 17 at 9-10.  Ms. Cortez had the burden at step two to show a medically determinable impairment significantly limits her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).

Evidence from an acceptable medical source is required to establish the existence of a medically determinable severe impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Acceptable medical sources include licensed physicians, either medical or osteopathic doctors.  *Id*.  The ALJ may consider evidence from other sources to show the severity of an impairment and how it affects a claimant's ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Other sources

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

include medical sources who are not acceptable medical sources, including naturopaths, and non-medical sources, including spouses or other family members. *Id.* However, information from individuals who are not acceptable medical sources cannot establish the existence of a medically determinable severe impairment. Social Security Ruling ("SSR") 06-03p.

The parties argue over whether there is evidence from an acceptable medical source to establish depression, social phobia, anxiety, and obsessive-compulsive disorder are "medically determinable" impairments. Ms. Cortez contends Marilyn Holmes, a nurse practitioner, and Shawnee Hansen, a therapist, diagnosed Ms. Cortez with depression, anxiety social phobia, and OCD. Dkt. 17 at 9-10. The Commissioner contends, and the Court agrees, that because Ms. Holmes and Ms. Hansen are not acceptable medical sources, their opinions cannot establish the existence of a medically determinable impairment at step two.

Ms. Cortez does not disagree with the Commissioner that Ms. Holmes and Ms. Hansen are not acceptable sources. However, she argues their opinions establish depression, social phobia, anxiety and OCD as severe impairments because acceptable medical sources, Akkaraju Sarma, M.D., Patrick Lyons, M.D., and Stacia Smith, M.D., diagnosed Ms. Cortez with these impairments. Dkt. 19 at 2-3. The record does not support this argument.

Dr. Sarma performed a physical, not psychiatric, examination of Ms. Cortez. Tr. 298-306. Under "diagnosis," he noted "possible depression" even though his report does not indicate he performed a psychological evaluation, evidences no observations consistent with depression, no testing, no indication of anti-depressive medications, and no mental health history. *Id.* An impairment is medically determinable only if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1508, 416.908. There is nothing indicating Dr. Sarma

REPORT AND RECOMMENDATION - 3

1  utilized medically acceptable techniques to support his opinion of "possible depression." Hence,
2  contrary to Ms. Cortez's assertion, Dr. Sarma's report does not establish depression to be a
3  "medically determinable" severe impairment at step two.

4  Dr. Lyons saw Ms. Cortez for "evaluation of chronic low back and leg pain." Tr. 418.
5  As with Dr. Sarma's report, Dr. Lyon's report does not indicate he performed a psychological
6  evaluation, evidences no observations consistent with depression, no testing, and no indication of
7  anti-depressive medications. *Id.* Dr. Lyon made no diagnosis of any mental disorder or
8  impairment and instead opined under impression: "Chronic low back pain with history of L5-S1
9  disc disease with right leg neuropathy/radiculopathy." *Id.* at 419. The doctor did note under
10 review of systems "depression, anxiety and mood swings with memory problems." *Id.*
11 However, as there is nothing indicating Dr. Lyon utilized medically acceptable techniques to
12 support these comments, the doctor's comments are insufficient to establish that these conditions
13 are "medically determinable."

14 Dr. Smith treated Ms. Cortez for her back and leg problems. The three treatment notes
15 that Ms. Cortez contends show the doctor diagnosed her with depression social phobia, anxiety,
16 and OCD, show otherwise. On February 9, 2010, the doctor saw Ms. Cortez for low back and
17 leg pain. Tr. 486. The doctor noted under "past medical history," "depression" but did not
18 diagnose Ms. Cortez with any mental disorder, and did not indicate she performed any type of
19 psychological evaluation. Tr. 486. On March 23, 2010, Dr. Smith saw Ms. Cortez to prepare her
20 for a disketomy and neural foraminotomy. The doctor noted under "review of systems" "mood
21 swings, depression," but did not diagnose Ms. Cortez with any mental disorder, and did not
22 indicate she performed any type of psychological evaluation. Tr. 485. And finally, on August
23 26, 2010, Dr. Smith saw Ms. Cortez regarding her low back pain. The doctor again did not

REPORT AND RECOMMENDATION - 4

1  diagnose Ms. Cortez with any mental disorders and instead noted under "past medical history:

2  History of asthma, diabetes, hypertension and depression."  Tr. 477.

3       There is nothing indicating Dr. Smith ever utilized medically acceptable techniques to

4  find Ms. Cortez had depression, social phobia, anxiety, and OCD, or that she even diagnosed her

5  with any mental disorder.  As such, Dr. Smith's reports are insufficient to establish that

6  depression, social phobia, anxiety, and OCD, are "medically determinable" severe impairments

7  at step two.  Accordingly, the Court will not disturb the ALJ's step two findings.

8  **B.**  **The ALJ's evaluation of Dr. Sarma's opinions**

9       Ms. Cortez contends the ALJ erred in rejecting the opinions of examining doctor

10  Akarraju Sarma, M.D.  Where uncontradicted, an examining doctor's opinion may be rejected

11  only for "clear and convincing reasons," or for "specific and legitimate reasons" if contradicted.

12  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  An ALJ does this by setting out a detailed

13  and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts

14  and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

15  The ALJ must do more than offer his conclusions; he must also explain why his interpretation,

16  rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th

17  Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

18       Dr. Sarma evaluated Ms. Cortez in July 2008 and opined Ms. Cortez could lift twenty

19  pounds occasionally, carry ten pounds occasionally, and due to postural limitations could only

20  occasionally bend, stoop and crouch.  Tr. 301.  In his assessment of Ms. Cortez's RFC, the ALJ

21  adopted most of these limitations.  The ALJ, however, rejected Dr. Sarma's opinion that Ms.

22  Cortez was limited to standing and walking for about two hours a day and limited to sitting, at

23  most, four hours a day on the grounds that:

REPORT AND RECOMMENDATION - 5

> Treatment records or physical examination findings do not support the degree of limitations set forth by Dr. Sarma. The claimant demonstrated no difficulties getting on and off the exam table or taking off her shoes. Her coordination, station, and gait were within normal limits, and range of motion was only mildly limited. Furthermore, motor strength, sensation, and reflexes were all within normal limits as well. While the claimant's pain complaints are substantiated by diagnostic images and noted tenderness of the lower back, objective findings do not support the extensive limitations on sitting, standing, and walking provided by Dr. Sarma.

Tr. 21.

The ALJ's finding that "treatment records" do not support Dr. Sarma's opinions is conclusory and insufficient. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). The Commissioner implies the ALJ's finding is not conclusory on the grounds that Dr. Sarma's opinions are inconsistent with the opinions of Thomas E. Hunt, M.D., a reviewing doctor. Dkt. 18 at 9. This is not a persuasive argument. First, the Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995). As pointed out by Ms. Cortez, the ALJ did not reject Dr. Sarma's opinion on the basis it was contradicted by Dr. Hunt. As such, neither can the Court.

And second, the opinion of a reviewing doctor such as Dr. Hunt cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician such as Dr. Sarma. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Hence, the Commissioner's argument that Dr. Hunt's opinion is an "expert opinion,"[3] is not alone sufficient to reject Dr. Sarma's opinion.

---

[3] Dkt 18 at 9.

REPORT AND RECOMMENDATION - 6

1    The ALJ also rejected Dr. Sarma's opinions as inconsistent with his physical examination
2 of Ms. Cortez.  An ALJ may discount a doctor's opinions where the doctor's opinions are not
3 supported by his own medical records or his own clinical findings. *See e.g., Tommasetti v.*
4 *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.
5 1996).  Here, the ALJ found Dr. Sarma's opinion about Ms. Cortez's standing and sitting
6 limitations were inconsistent with his examination findings that she had no difficulty getting on
7 and off the exam table or taking off her shoes; had normal coordination, station, and gait; mild
8 limits to her range of motion; normal motor strength, sensation, and reflexes.  Tr. 21.  There are
9 several problems with this finding.
10    First, Dr. Sarma's opinions about Ms. Cortez's standing and sitting limitations were
11 based on factors other than his examination findings.  Dr. Sarma opined:

> my objective exam shows that she does have some pain which is elicited on straight leg exam and also along a palpation and observation of her lumbar spine, as well as during flexion of her lumbar spine.  From that objective basis, she does have considerable pain to suggest she stand and walk for about two hours per day.  She could likely sit for, at most four hours in an eight-hour workday.

16 Tr. 301.  These findings indicated Dr. Sarma believed Ms. Cortez had standing and sitting
17 limitations based on a pain symptoms based on a "straight leg" exam, lumbar flexion and upon
18 palpation.
19    Second, on their face, it is not readily apparent that Dr. Sarma's findings are inconsistent
20 with getting on and off an exam table, normal strength, coordination, gait and mild limits to
21 range of motion.  For instance, the fact Ms. Cortez could get on and off an exam table or walk
22 with a normal gait in an exam room, does not demonstrate how long she can stand or walk.  The
23 ALJ, of course, found the doctor's standing and sitting opinions were inconsistent with getting

REPORT AND RECOMMENDATION - 7

on an off an exam table but failed to provide any explanation as to why.  In some cases, the inconsistencies in a doctor's report are self-evident, and the need for an ALJ to provide an explanation is minimal; this is not such a case.  Instead, we are left with findings in which the ALJ did little more than offer his conclusions.

And third, in assessing Dr. Sarma's opinions, the ALJ acknowledged Ms. Cortez's pain complaints were substantiated by diagnostic images and that Dr. Sarma noted tenderness of the lower back.  But other than rendering the conclusory statement that "objective findings do not support the extensive limitations on sitting, standing, and walking provided by Dr. Sarma," the ALJ failed to explain why his interpretation, rather than the Dr. Sharma's interpretation was correct.  As noted above, as the ALJ failed to explain why his interpretation, rather than the examining doctor's interpretation, is correct, the ALJ erred.  *Orn v. Astrue*, 495 F.3d at 632.

**C.      The ALJ's assessment of Ms. Cortez's credibility**

Ms. Cortez contends the ALJ erred in finding her less than credible.  The ALJ did not find Ms. Cortez malingering and thus was required to give "'specific, clear and convincing reasons'" to reject her testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In evaluating a claimant's testimony, an ALJ may use "ordinary techniques of credibility evaluation." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities

REPORT AND RECOMMENDATION - 8

inconsistent with the alleged symptoms.  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  While a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, an ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  *Id.* at 1112-13.  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Id.*

The ALJ discounted Ms. Cortez's testimony, first finding that "the medical evidence in the record does not support the extensive limitations alleged by the claimant." Tr. 20.  Substantial evidence does not support this finding.  The ALJ first noted x-rays from 2008 showed only slight narrowing of the joint spaces or were "negative."  *Id.*  However, as pointed out by Ms. Cortez, in 2010, MRI imagining showed Ms. Cortez had broad based herniation or protrusion, posterior displacement of the S1 nerve, which led to a subsequent disc excision and neuroforminotomy.  Tr. 494, 404-05.

The ALJ also noted Dr. Sarma's physical exam "failed to document any neurological deficits." Tr. 20.  While it is clear that Dr. Sarma noted Ms. Cortez was "alert and oriented x 3 with good reflexes" under "neurologic," it is not clear what bearing this finding has on Ms. Cortez's pain complaints or ability to stand or sit.  Hence, while the ALJ accurately noted Dr. Sarma found no deficits under neurologic, the ALJ failed to explain how or why this finding did not support her testimony.

The ALJ further found "despite the claimant's report of back pain beginning as early as 2001, treatment records do [not] document such complaints until . . . 2008."  Tr. 20.  This finding is contradicted by the report of Richard Gerlach, PA-C, and Patrick Lyons, M.D., of Northwest

REPORT AND RECOMMENDATION - 9

Orthpaedic Surgeons which noted Ms. Cortez had been complaining of back pain since 2001; that "she was seen here by Dr. Lang in 2003 for chronic back pain with L5-S1 herniated nucleus pulposus;" that she had "lumbar epidural steroid injections done through our office with Dr. Billow in 2002"; and that "she had L5-S1 translaminar February 13, 2002, left SIJ July 31, 2002 and Left L5-S1 transforminal with SNRB October 9, 2002." Tr. 418.

And finally, the ALJ found "following the lumbar decompression, the claimant continued to report pain symptoms" even though the "MRI in August 2010 showed no nerve root impingement or any significant disc problems." Tr. 20. This finding, which is based on the report of Dr. Stacia Smith, M.D., fails to set forth all of Dr. Smith's findings. Dr. Smith noted the August 2010 MRI showed there "appears to be pretty good room around the S1 nerve root without recurrent disk protrusion, There is evidence of some scar formation and a small cystic looking lesion of the L5-S1 facet. It is really not substantially impinging on the S1 nerve root." Tr. 477.

However, Dr. Smith after examining Ms. Cortez also found "she is tender to palpation along the paraspious muscles of the lumbar spine. She has restricted range of motion into her lumbar spine. Her gait is antalgic. She can fire her toe flexor and extensors but her left leg is positive for low back pain with radicular symptoms with straight leg raise." *Id.* Thus, notwithstanding MRI images indicating no nerve impingement, Dr. Smith found Ms. Cortez's back problems still caused her pain.

The ALJ also discounted Ms. Cortez's testimony as inconsistent with "her reported activities." Tr. 20. In specific, the ALJ found "treatment records from February 2008 noted that the claimant was walking about an hour a day on average for exercise without complaint of significant or limiting pain." Tr. 20. The record shows Ms. Cortez reported to her doctors that

she "started walking for exercise" and "is walking about a hour a day on average." Tr. 285. This supports the ALJ's finding as it is inconsistent with Ms. Cortez's testimony that she can walk for only 20 to 25 minutes. Tr. 47.

Ms. Cortez argues this inconsistency does not undermine her credibility because "the records do not reflect that plaintiff walked for an hour at a time or if the hour walk was broken up into several shorter walks." Dkt. 17 at 20. This is not a persuasive argument for two reasons. First, it is not the function of the Court to consider whether there is substantial evidence to support a claimant's theory of the case, but rather whether substantial evidence supports the ALJ's finding. *See Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) ("The scope of our review, however, is limited: we may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.").

And second, the ALJ has the responsibility to interpret the evidence. Ms. Cortez's interpretation of the evidence is reasonable but so is the ALJ's. Where the evidence is susceptible to more than one rational interpretation, as it is here, the Court must uphold the ALJ's findings so long as they are supported by inferences reasonably drawn from the record. *Tommasetti*, 533 F.3d at 1038.

The ALJ also found Ms. Cortez's testimony about her limitations was inconsistent with a statement she made to her therapist that "she started volunteer work and was able to complete four hours of volunteer work with little physical discomfort." Tr. 20. Ms. Cortez argues this statement should not be held against her because, as she testified at the hearing before the ALJ, she found the volunteer work was too physically demanding and volunteered only once. Dkt. 17 at 20 (referring to Dkt. 55). This argument does not account for the discrepancy between Ms. Cortez's statements. It was reasonable for the ALJ to find Ms. Cortez's statement of being able

REPORT AND RECOMMENDATION - 11

to perform her volunteer work "with little physical discomfort" was inconsistent with her claim that she quit volunteering because it was "too physically demanding."

As one of the two reasons the ALJ used to discount Ms. Cortez's credibility was invalid, the Court must determine whether reliance on the invalid reason was harmless error. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008). The *Carmickle* harmless error standard applies where some of the reasons the ALJ relied on to reject evidence are invalid. *Id*. at 1162. Errors committed under these circumstances are harmless if there remains substantial evidence supporting the ALJ's conclusions, and the error does not negate the validity of the ALJ's ultimate conclusion. *Id*. The key issue is "whether the ALJ's underlying decision remains supported, in spite of any error, and not whether the ALJ would necessarily reach the same result on remand." *Id*. at 1163 n. 4. Substantial evidence supports the ALJ's decision to discount Ms. Cortez's testimony as inconsistent with her activities. Accordingly, the error the ALJ committed regarding was harmless, and the ALJ's determination regarding Ms. Cortez's credibility should be affirmed.

**D.      The testimony of the vocational expert**

Ms. Cortez contends the ALJ erred at step five in failing to pose a hypothetical question to the vocational expert that included all of her functional limitations. The Court need not resolve this contention as the ALJ erred in evaluating the opinions of Dr. Sarma and must necessarily reevaluate on remand what impact, if any, this has on Ms. Cortez's RFC, and steps four and five.

**CONCLUSION**

For the foregoing reasons, the Commissioner's should be **REVERSED** and this case be **REMANDED** for further administrative proceedings. On remand, the ALJ should utilize the

REPORT AND RECOMMENDATION - 12

five step disability evaluation process and (1) reevaluate the opinions of Dr. Sarma; (2) develop the medical record as necessary; and proceed to steps four and five as appropriate.

Any objections to this Recommendation must be filed and served upon all parties no later than **November 5, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **November 9, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of October, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13